We'll turn to the next matter on our calendar. James Crockett and Teresa Crockett versus the City of New York. Do you know where my other collars are? There's only one in this. The other? Okay. All right. Thanks. Do you have a moment, Your Honor? Sure. Good morning, Your Honor. Scott Kornbaum for the appellants. Good morning. In every trial, the parties seek to present witnesses who can be considered non-biased because every trial judge gives a standard instruction that the parties are interested witnesses. Obviously, they have an interest in the outcome. The Crocketts or Mr. Crockett presented Petra Luna who fit that description of a non-interested witness. He also presented the testimony of Alan Miller, an expert witness, certainly paid his first services. Against this backdrop, the Assistant Corporation Counsel's summation can be viewed as insidious because if you take a look at what he said in a very short closing argument, in total, it was 2930 pages of which approximately 12 of them concerned either Luna, Dr. Miller, or colloquy about the impropriety of the closing argument. And so he accused Mr. Brewington and his associate of suborning perjury and contrary to the city's claim, this was not a misstep. This was a calculated summation. He accused Mr. Brewington directly of having an untoward relationship with a certified court interpreter and Judge Chen, make no mistake about it, found that that was misconduct. But he went further. He gave a curative instruction. She did. And that curative instruction compounded the problems because what she said was the following. Yes, she struck the testimony. She directed the jury to disregard it. But then she said, what the lawyers, and quote, and this is at 1464 of the joint appendix, what the lawyers did with respect to preparing for their cases is of no concern to you. So what they heard was Joshua Lacks say, he suborned perjury, meaning Mr. Brewington and his associate. You didn't say that exactly. No, that's correct. No, no, of course he did. They went outside. But that's the fair interpretation of what he's saying is that something untoward. He struck the testimony. That's correct, Judge. And then she gave, as Judge Poole pointed out, she gave a curative instruction. Was it an objection to the curative instruction? No. There was not, Judge. There was not an objection to the curative instruction. Although he . . . You didn't say suborn perjury. He said you can draw your own conclusions. Oh, no. That's not what he said, Judge. Tell me exactly what he said. And this is at 1460 of the joint appendix. Talking . . . Could you say that page again? Sure. 1460. 1460. And the exact quote can be found at page 12 of our opening brief with the blue covers. So he legitimately begins to call into question the credibility of Luna's testimony. Hyperbolic terms, all fair game. Right. Then he says, she comes here and she says, oh, yeah, no. I definitely would have seen him if he stood up. And you may be asking yourself, how did this happen? How did Luna go from one bad fact for plaintiff, two bad facts for plaintiff, three bad facts for plaintiffs, to everything plaintiff says is true? I'm going to corroborate it all. Let me be sure I have the context. This is her . . . She testified that she saw him on the ground and there was a gun . . . Key fact. And there was a gun next to him that he claimed someone had dropped there? Correct. Mr. Crockett's . . . I'm sorry, Judge. No, no. Mr. Crockett's testimony . . . But this is the testimony that the defense counsel is commenting on. Correct. All right. Yes. All fair game so far. Obviously, highlighting inconsistencies between deposition testimony and trial testimony is obviously appropriate. How did Luna go from . . . to everything plaintiff says is true? I'm going to corroborate it all. Quote. This is all a quote. Well, to answer that question, let me ask you this. Did you pay attention to where plaintiff's other attorney was while Mr. Brewington was asking questions this morning? Did you notice Ms. Harris Marchese disappear while the witness, I believe, Sergeant Duffy, was testifying on Thursday morning right before Luna took the stand? And did you notice how Mr. Brewington greeted the translator? If you consider all those things, you'll have your answer. That is, he is directly suggesting that, A, they manipulated her or convinced her to say something that wasn't true, and in a bizarre and outrageous suggestion, somehow there's this untoward relationship between the court interpreter, because Luna testified in Spanish, and Mr. Brewington. Now, help me understand why the curative . . . It was stricken, right? Yes. Yes. Yeah. Help me understand why the curative instruction isn't enough, because you read that, there's objection, the court says sustained, and then there's a colloquy, and then the next thing the jury hears after the attorneys have their, how are we going to deal with this, is, ladies and gentlemen, I'm going to strike the last part of that argument. Mr. Lacks could not have been happy about that. The objection was sustained, the court comes back and says, I'm striking what he just said. Because there's two things that follow. First, Judge Chen gave it and then took it away for the reason I just identified, because she basically says, okay, I've told you to ignore it, but don't worry about what they've done. But then look how Lacks follows up, which is at 1464, after the judge strikes the testimony and says, don't worry about, you're not to concern you, the jury, don't concern yourself, and again, that's at 1464 as well, I think. Yeah, 1464 as well. He then says, thank you, Your Honor. So the point is that she's their witness, she's changing her story in court. So from that, the judge is going to tell you how to evaluate the witness's credibility, she's going to tell you about the things to consider, again, we showed you, she said different things previously to being called in court today, and they called her as their witness. You make of that what you will. He hammers home, he doubles down . . . There was no objection to that statement. Absolutely, Judge. I wish there were, I would have, I'd like to think I would have, but he doubled downs on it. I think it was Judge Parker who talked about it, or maybe it was you, Judge Livingston, just about the fact of the curative instruction, while obviously a very important consideration, but this court has made clear in Pappas that a curative instruction is not necessarily enough. But he's allowed to say, isn't he, that she testified differently before? Oh, of course. Isn't that the art of course examination and summation? I've candidly said that's all fair game, but he linked it after the curative instruction, he then links it to exactly what she struck. I don't see that, counsel. He said she's their witness, which no one denied that that was true. You make of that what you will. This is exactly after saying that, the objectionable testimony, the judge saying, don't worry yourself about, to the jury, don't worry about what lawyers do in preparing their witnesses, which is exactly what he accused them of doing in the first instance. And then he says, you make of that what that will, referring to them preparing her outside the courtroom. That is improper. The time has expired. You've retained two minutes for rebuttal.  We'll hear from the city of New York. Good morning, your honors. May it please the court. Alina Drucker on behalf of the city. Your honors, jury verdict reached after six days of trial shouldn't be disturbed over this. The summations- It was improper argument. It was objectionable. I think it straddled the line. I think there's a lot of being read into it. And there's a case where we talk about how you can, I don't think that explicitly anything was said. I just want to correct. There were no points that anyone would say. The plaintiff's counsel is suborning perjury or anything like that. They were exactly what the court said at the sidebar, that inartfully, perhaps straddling the line, the attorney tried to suggest that this is the plaintiff's witness, and this witness had changed her testimony. She gave a statement to the police initially on that day. She gave a deposition. She gave testimony at trial. And that testimony became increasingly more favorable to the plaintiff's version of the story. That's not to say that anyone suborned perjury. That's to say that she was prepared and she was coached. She was told to lie, not that any great impropriety happened. And that's exactly what the trial court recognized when in the- He didn't say that, counsel. He didn't say no great impropriety happened. He suggested that perjury was suborned. I think that even if we had that, the curative instruction was enough. But I don't actually think that in a fair reading of what he said, I concede it's an artful. It drew an objection and the objection was sustained. It was not proper. But that said- The city never established a foundation. He never asked, correct me if I'm misunderstanding the record, but he never said, did you meet with the plaintiff's attorney? How many times? That would have been a foundation. He instead is commenting on, did you see them in the courtroom, members of the jury? Isn't that improper? I think it is.  I think that a jury is in- What do you mean straddles the line? And the credibility of a witness who testifies in front of them is supposed to look to their demeanor as well. Not only to the things they say, but how they say them. And what the jury was asked improperly to do is to speculate what happened in the hallway or how she was prepared in a way that was not, there was no foundation for it. And that was struck. And what the court said to the assistant corporation counsel in this was, that's fine. If what you're trying to do is tell them that they prepared the witness, that's fine, that she was coached. You can say things like they called her, that's fine, that's fine, and ask them to draw some inference based on that. Then they gave a curative instruction, and then there's this portion, which we now have heard about, where he comes back and he says, okay, here's what happened. She changed her testimony, you make of that what you will. He literally used the guidance that was given to him by the district court a moment before at the sidebar. And that is now being sort of cast as doubling down, but that's not necessarily the fairest reading. And the damning version, the most damning reading we could have is the reading where we say, he was intending to infect the jury. But that didn't happen. It didn't happen because it was a curative instruction immediately. It was struck from the record. It didn't happen because the trial court in its general jury instructions then expressly emphasized again, summation is not evidence, your job is to consider the evidence, and only the evidence. The arguments that the parties presented, the rhetoric that came out from both sides, very sort of passion summations are not evidence, and the jury knew that. And moreover, the plaintiff's attorney on rebuttal took this and really effectively turned it around, used it as the core of his whole summation. After it was struck, he said, you see how the city's attorneys have nothing but vitriol and ad hominem attacks. You take with that and you consider how, and he says, another statement that actually drew an objection. He says to them, I learned from a lawyer many years ago, Bill Cunsley, there's an objection that's not appropriate. When you can't win on the facts and you can't win on the law, you make it up and you pound the table. And then he refers to these statements that were made in the summation to really effectively show how, in their version of what they want the jury to believe, that everyone on the other side is lying. And they're both throwing these sort of vitriol back and forth. It's not a perfect summation. But it's not such an offensive thing that it infects the verdict. A verdict reached by a jury after six days of sitting over a trial over a lot of conflicting evidence. And there's a district court's analysis in the portion of the decision below that talks about the weight of the evidence. Does a great job marshalling all those facts for the court to show that a lot was presented and the jury really had to ask, draw these credibility determinations. Who do you believe? Because the stories were incompatible. They chose to believe the version of the story that was presented by the city and that is not something that can be disturbed on this basis. If there are no further questions, we'd ask you to affirm. Thank you, counsel. Mr. Kornbaum, you have two minutes for rebuttal. I urge the court to review the summation in its entirety, because I didn't get a chance to talk about the unobjectionable comments. Not unobjectable, the non-objected to comments regarding Dr. Miller. But I want to just read on page 1472 to 1473 of the joint appendix. This is pernicious, and let me point out here that it's a bit rich to suggest or to criticize Bagan, that's the officer who didn't see anything on the side of the street, for not seeing plaintiff. When plaintiff's counsel missed their own client in the video of him in the convenience store. Indeed, it was suggested that a man who looked more like myself, taller, heavy build, short hair, was his client, the plaintiff. Unless, of course, questioning Officer Ambrosino on this video about the fake Crockett was deliberate. Which might explain why a doctor lies about medical evidence and a plaintiff can't remember a single thing. That permeates the entire summation. That type of insinuation, sometimes more direct than others, that Mr. Brewington lied repeatedly, his witnesses perjured themselves, he suborned perjury. It is a grotesque summation, right? As far as points made by Ms. Druker, at page 35 and 36 of the special appendix, Judge Chen makes crystal clear that this conduct was gross. Talking about the objective to comment, that it was utterly impermissible and just embarrassing that the city even tried to defend it. She did what she could to protect the record. Okay. I mean, she admits, we all admit, that it may have got close to the line, maybe crossed it. But she did what is the judge's power to do, and that is she told the jury to ignore it. I'm just raising it in response to the suggestions that it didn't cross the line. Everybody knows it crossed the line. It was bad, really bad. And the exact type of conduct that this court has repeatedly condemned. As far as the, Mr., I see my time is up. You can finish. Okay. Regarding Mr. Brewington's opportunity to rebut the allegation. Oh, come on. He was forced, first of all, it was not good. And he's a tremendous trial lawyer, very skilled. This was not one of his finer moments, because what could he do except for violate the very rules, which is sort of say, they're wrong, and sort of vouch for himself. It's all in black and white for you. Thank you very much. I have a question unrelated to this. Is this, were they here for us? All the students and stuff? They're law students and they want to watch the program. Excellent. Thank you very much. Thank you. The next two cases are on submission, so I'll ask the clerk to adjourn court. Court is adjourned.